**UNITED STATES**

v.

**OFFICE NO. 508 RICOU–BREW-STER BLDG.**

**Cr. No. 14659.**

United States District Court,
W. D. Louisiana, Shreveport Division.

Feb. 23, 1954.

T. Fitzhugh Wilson, Mason P. Gilfoil, Shreveport, La., for government.

Booth, Lockard, Jack & Pleasant, Shreveport, La., for Henry Cullins, defendant.

DAWKINS, Jr., Chief Judge.

Invoking the Fourth Amendment to the Federal Constitution,[1] and Rule 41, Federal Rules of Criminal Procedure,[2]

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] "Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) *there was not probable cause for believing the existence of the grounds on which the warrant was issued,* or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." Fed. Rules Crim.Proc. rule 41, 18 U.S.C. (Emphasis supplied.)

Henry Cullins, alleged lessee of the premises described in the caption, has moved: to quash a search warrant issued by the U. S. Commissioner, and the affidavit upon which it was based; to suppress, as having been illegally obtained, any evidence resulting from the search; and to require the District Attorney to return any and all matter seized in the search.

The record reveals that on November 6, 1953, Harold B. Smitherman, a Special Agent for the Intelligence Division of the Internal Revenue Service, appeared before the Commissioner in Shreveport and executed an affidavit on a printed form, the applicable portion of which reads:

"That *he has reason to believe* that on the premises known as office No. 508 Ricou-Brewster Bldg. (424 Milam Street) Shreveport, Caddo Parish, La., there is now being concealed certain property, namely, books, records, papers, documents and memorandums relating to the business of accepting wagers by a person, or persons, liable for the payment of the special tax provided for and imposed by 26 U.S.C. 3290 which has not been paid in violation of 26 U.S.C. 2707(b) and which are * * *.

"And that *the facts* tending to establish the foregoing grounds for issuance of a search warrant are as follows:

"That he has kept the premises under surveillance and observed as recent as Nov. 4, 1953, the following: Football scoreboard of the type commonly used by persons en-

gaged in accepting wagers; overheard conversations relating to football games to be played over the coming week-end; seen a ticker tape machine." (Emphasis supplied)

Upon the basis of this affidavit, the Commissioner issued a search warrant, on the same date, the body of which contains the following language:

"Affidavit having been made before me by Harold B. Smitherman, Sp. Agt. Intelligence Division of Internal Revenue Service that he (*has reason to believe*) that (on the premises known as) Office No. 508 Ricou-Brewster Building (425 Milam Street), Shreveport, Caddo Parish, Louisiana, in the Western District of Louisiana, there is now being concealed certain property, namely books, records, papers, documents and memorandums relating to the business of accepting wagers by a person, or persons, liable for the payment of the special tax provided for and imposed by 26 U.S.C. 3290, which has not been paid in violation of 26 U.S.C. 2707(b) and as I am satisfied that there is *probable cause* to believe that the property so described is being concealed on the (premises) above described *and that the foregoing grounds for application for issuance of the search warrant exist. * * *."* (Emphasis supplied)

The return on the warrant shows that Mr. Smitherman searched the premises at 3:00 p. m., November 6, 1953.[3] On November 9, 1953, he filed a complaint[4] against Cullins, who was

---

3. Seizing the following:
  "6 legal pads containing memoranda
  "1 book entitled ledger (loose leaf)
  "1 telephone list finder
  "1 letter dated 9–7–53 by Roland Wilkins
  "1 small loose leaf ledger—leather bound
  "1 envelope containing current bills to Henry Cullins
  "2 handicap sheets for week ended 11–8–53

  "5 loose sheets legal size
  "miscellaneous small sheets (about 3 x 5)"

4. Alleging violation of 26 U.S.C. § 2707 (b): "Any person required under this subchapter to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this

arrested by the Marshal later on the same day.

Earlier that day Cullins had filed a rule, through his attorneys, calling upon Mr. Smitherman and the District Attorney to show cause: (1) why he should not be permitted to inspect and copy the books, papers and documents seized during his absence from his office; and (2) why the seized property should not be suppressed as evidence in any criminal proceeding. After hearing the rule, we ordered that the inspection and copying be permitted, in the presence of a representative from the District Attorney's office. Upon request of all parties, we deferred action on the motion to suppress until a later date.

On December 30, 1953, Cullins filed a supplemental and amended motion praying that the affidavit and search warrant be quashed, and reiterating his prayer that the evidence seized in the search be suppressed.

Presented for determination, therefore, is the legal sufficiency vel non of the affidavit and search warrant issued pursuant to it.

Historically, the Fourth Amendment was adopted to avoid one of the abuses suffered by Englishmen, and by the American colonists under English rule, before the Revolution. In 1766, in order to correct such abuse, whereunder the person, property and premises of individuals had been subject to practically unlimited search and seizure, the English House of Commons passed various resolutions condemning general, or unlimited, search warrants. Later, when the people of this country founded the various states and the nation, they provided in their constitutions that the people should be secure in their persons, houses, papers and effects against unreasonable searches and seizures.[5]

The Fourth Amendment, accordingly, originated in the determination of the framers of the Amendments to provide a Bill of Rights for the Constitution, securing to the American people those safeguards which had grown up in England to protect against such unreasonable conduct by police authorities.[6] This Amendment wisely requires that " * * * no Warrants shall issue, but upon *probable cause,* supported by Oath or affirmation * * *."

■ Rule 41 stipulates that such "probable cause" shall be made to appear from an affidavit, which of and by itself must set forth facts sufficient to justify the Commissioner in believing that appropriate grounds exist for issuance of a search warrant. Which is to say that facts—not mere conclusions of the affiant—must appear within the four corners of the affidavit so as to justify a reasonable and ordinarily prudent person in believing that there is "probable cause" to conclude that a violation of the law has occurred, or is occurring, in the premises to be searched.[7] The facts set forth need not be sufficient to support a verdict of guilt beyond a reasonable doubt. They must establish, however, something more than mere suspicion or possibility of criminal activity.

■ No hard and fast rule can be followed in determining the sufficiency of the alleged facts to constitute "probable cause", and each case must be determined upon its own particular merits or demerits. It may be said, however, as a general proposition, that mere conclusions of the affiant, unsupported by

---

subchapter who willfully fails to pay such tax, make such returns, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution."

5. 47 Am.Jur. 503, 506.

6. 47 Am.Jur. 505.

7. U. S. v. Evans, D.C., 97 F.Supp. 95, 96; Lowrey v. U. S., 8 Cir., 161 F.2d 30, certiorari denied 331 U.S. 849, 67 S.Ct. 1737, 91 L.Ed. 1858; see also Annotation 27 A.L.R. 748.

concrete facts, or facts alleged upon bare belief or information, unsupported by other reliable facts affirmatively averred, are inadequate in the eyes of the law to save the affidavit, and the warrant based upon it, from the court's condemnation, if genuine "probable cause" is not shown.

With those principles before us, therefore, we now examine the affidavit and warrant in question to determine whether, as a matter of law, the Commissioner reasonably had "probable cause" to believe from the affidavit that a violation of federal law had occurred, or was occurring, at the premises in question. The cardinal consideration is not whether a gambling business was being conducted in the establishment, but whether this was being done without the registration and licensing, and without payment of the gambling tax, required by federal law. Gambling businesses are forbidden by State law but are not prohibited by Act of Congress. In fact, it is only through the licensing and taxing approach that the federal government can exercise any jurisdiction over such businesses.

To put it another way, the affidavit here must stand scrutiny as to whether it contains *facts* which constituted "probable cause" to conclude that a violation of the federal *tax* laws had occurred. If it fails to meet that test, it is fatally defective and must be struck down under the proscription of the Fourth Amendment.

■ In our judgment the affidavit is inadequate because it goes only half-way toward establishment of "probable cause". It contains facts reasonably tending to show only one of two necessary elements, namely, that a gambling business was being carried on at 508 Ricou-Brewster Building. It contains *no facts* reasonably tending to show the second essential element in order for there to have been a federal violation, namely, that the person or persons operating the business had not registered or paid the tax required by federal law. All it shows in the latter respect is that Mr. Smitherman "has reason to believe" that such is the case—a conclusion. It does not show *why* he entertained that belief, i. e., upon what *facts* his reason for such belief was based.

■ According to settled jurisprudence, affidavits as to mere "belief" or "information and belief", without *facts* reasonably justifying and supporting such belief, are legally insufficient to serve as the basis for search warrants, and must be stricken.[8]

■ However guilty and deserving of punishment we may believe the defendant to be, no matter how outraged we may feel that a known law-violator is escaping his just deserts through an apparent technicality, yet it is our duty to maintain the fundamental rights of all citizens, be they innocent or guilty.[9] To deviate one iota from this principle, in order to punish one of known guilt, would be to remove the Constitutional cloak of protection thrown about the shoulders of all American citizens

---

8. " * * * affidavits * * * which simply state that the affiant * * * has reason to believe and does believe that a crime has been or is in course of being committed, or which go no farther than to allege conclusions of law or of fact, or which set out on mere information and belief the material facts on which the right to search or seize is based, are insufficient to support a search warrant, and any such warrant issued on such affidavits * * * is invalid" * * * "If the peace officer has reason to believe and does believe that a search or seizure ought to be made, he should state in his affidavit *the facts* which led him to that conclusion, and which were known to him of his own knowledge." · (Emphasis supplied.) Schencks v. U. S., 55 App.D.C. 84, 2 F. 2d 185, 187. To the same effect, see U. S. v. Reynolds, D.C., 111 F.Supp. 589; Worthington v. U. S., 6 Cir., 166 F.2d 557; U. S. v. Lai Chew, D.C., 298 F. 652; U. S. v. Harnich, D.C., 289 F. 256; In Re Rosenwasser Bros., D.C., 254 F. 171; U. S. v. Dziadus, D.C., 289 F. 837.

9. McDonald v. U. S., 335 U.S. 451, 69 S. Ct. 191, 93 L.Ed. 153.

against unreasonable searches and seizures. The interests of society as a whole must be protected, and it is better to permit one offender to escape punishment than to open the door to abuses against all the people, which could and probably would result were this basic constitutional right abrogated in the slightest degree.

Cullins still may be, and ought to be, prosecuted for violation of Louisiana laws against gambling, if he actually was guilty of such. Nevertheless, insofar as this court is concerned, we have no alternative but to Sustain the motions filed in his behalf.

Proper decree should be presented.