**Pauline Contreras BARRIENTES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15935.**

United States Court of Appeals Fifth Circuit.

June 28, 1956.

Rehearing Denied July 24, 1956.

Certiorari Denied Oct. 22, 1956.

· See 77 S.Ct. 102.

M. C. Gonzales, San Antonio, Tex., Pete Tijerina, San Antonio, Tex., for appellant.

Harman Parrott, Asst. U. S. Atty., and Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

PER CURIAM.

Found guilty by a jury of, and sentenced for, violations of the narcotics laws of the United States, the defendant is here assigning as error: (1) the admission of the narcotics into evidence over the objection of defendant that the search warrant was illegally served; and (2) the denial of her motion for an instructed verdict.

The ground of the first claim is that the officers who seized the narcotics under a search warrant did not serve it in accordance with, but in violation of, Section 3109, Title 18 U.S.C.,[1] in that, though they were not refused admittance, they nevertheless broke in the door and entered by force, and that, under Accarino v. United States, 85 U.S. App.D.C. 395, 179 F.2d 456, 465, and Gatewood v. United States, 93 U.S.App. D.C. 226, 209 F.2d 789, such service was illegal.

---

1. "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." *Section* 3109, Title 18 U.S.C.

The ground of the second claim is that there was no evidence connecting her with possession of the narcotics, and that there was evidence: that she was not at home at the time when, according to her husband's testimony, the package of narcotics was brought to the house; that she was not told that it was hidden in, and she did not know that it was in, the washing machine.

Of the first ground, it suffices, we think, to say that: the section invoked by defendant does not provide, the cases cited by defendant do not hold, and we have found none holding, that the use of excessive force in serving a search warrant, such as is claimed was used in this case, will invalidate a search and seizure made under it; and that, while the use of excessive, that is unnecessary, force is in any case to be deprecated, evidence obtained under a valid warrant is not thereby made inadmissible.

■ The second point is no better taken. The evidence shows without contradiction that when the officers pulled out of the washing machine, where the defendant was standing, the sack containing the narcotics, she told the officers, "That isn't his, that's mine". It is significant, too, that it was she and not her husband who was the first to go to the washing machine, and that, as the officer walked over to the old washing machine, took the lid up, and started to reach in it, she started pulling the clothes out, and the officer said to her, "Just hold it, I will reach into the washing machine and pull the clothes out." Upon this evidence and the other evidence in the case, including her own testimony that she claimed the narcotics to protect her husband, and that she was at the washing machine because her soiled clothes were in it and she didn't want the officer to see them, the question of her guilt was certainly a question for the jury.

No reversible error appearing, the judgment is affirmed.

RIVES, Circuit Judge (concurring specially).

■ It seems to me that we do not reach the question of whether the use of excessive force in serving a search warrant will invalidate the search and seizure, because the testimony of the federal narcotic agent, which the district court had a right to believe, showed that there was no such excessive force.[1]

I, therefore, concur specially.

---

1. "A. That afternoon, or rather that morning, I and Agent Bromley had obtained a federal search warrant and about 2:15 p. m. the same day we went to 1322 San Carlos Street accompanied by Agents Hooper and Hazur, Hobson and Detective Lieutenant of the City Police Department Hutton, and Detective Sergeant Saenz went along to serve the federal search warrant. Detective Saenz and Agent Hooper and myself went to the rear door and made entry there where we served the search warrant.

"Q. Who was present when you entered the room? A. Sergeant Saenz— oh, you mean the defendant?

"Q. In the home. A. In the home, in the kitchen the defendant Barrientes was sitting at the table; his wife I believe came into the room just as we came in.

"Q. Did you advise them who you were? A. Yes, that we were narcotic agents serving a search warrant.

"Q. Did you tell them what you wanted?

"Mr. Tijerina: At this time, Your Honor, may I have the witness on voir dire, may it please the Court?

"The Court: Yes, sir.

"*Questions by Mr. Tijerina on Voir Dire:*

"Q. Agent Dean, who had the search warrant—did you have the search warrant? A. I had the search warrant in my pocket, sir.

"Q. And you went through the back door? A. Yes, sir, Sergeant Saenz went in first. I went in second.

"Q. Sergeant Saenz broke the door or did you break the door? A. Sergeant Saenz knocked on the door and it fell open and he fell, I think, almost into the kitchen, and I came in right behind him.

"Q. And you say that broke the door down and it fell in? A. It didn't break the door down, sir; it just swung open. It was a very flimsy door.

"Q. And you did not ask; you just went into the house then? A. Yes, sir, went right into the house.

BROWN, Circuit Judge.

I concur fully in the result and all that is said under Ground Two. I join Judge RIVES as to the First Ground.

Miller, Circuit Judge, dissented.

"Q. And that is when you presented your search warrant? A. Yes, I think Sergeant Saenz told everybody to remain standing, that we had a search warrant, and Sergeant Saenz remained in the kitchen and I ran into the bathroom into the toilet to make sure there was nobody in the toilet.

"Q. Before you knocked on the door did you call to anybody in the inside and identify yourself as a federal agent? A. Not before knocking, no, sir.

"Q. Did you call toward the inside and tell anybody or give notice to anybody that you were there with a federal search warrant? A. Not standing outside of the house, sir.

"Q. Not until you were inside the house? A. It was inside of the house.

"Mr. Tijerina: May it please the Court, at this time the defendant is going to object to any testimony by this witness on the ground that he was there illegally; he was there by virtue of a search warrant and I think that he is bound by the search warrant, and under the law it states that the door may be broken when admission is refused. The federal agent must first notify that he is there by virtue of the search warrant and if he is refused, the door then may be opened by the federal agent.

"The Court: That will be overruled, counsel.

"Mr. Tijerina: Note our exception to the Court's ruling."