UNITED STATES of America

v.

Peter JOSEPH, a/k/a Pete Joseph.

Crim. Nos. 19673, 19768.

United States District Court
E. D. Pennsylvania.

June 12, 1959.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., for defendant.

LORD, District Judge.

The informations in above causes charge defendant Peter Joseph with failure to pay the special occupational tax on wagering, and with failure to file excise tax returns, respectively, in violation

of Title 26 U.S.C. §§ 7262 and 7203. In short, the government's informations charge Peter Joseph with operating a "numbers" business without having paid occupational or excise tax thereon.

The government has in its possession the fruits of a search of defendant's home in Pottsville, consisting of numerous items of gambling paraphernalia and a substantial amount of money.

The present problem arises on the motion of Peter Joseph for suppression of the seized property as evidence against him in these criminal proceedings, and for the return of such property.

In essence the defendant's motion is couched in terms of the applicable portions of Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C. It asserts that the search warrants were invalid since no showing of probable cause was made; that the premises to be searched and the property taken were not adequately described; and that the warrant was not legally executed.

It is conceded that the agents of the Internal Revenue Service made no arrest on June 21, 1958, which was the date of the search. Therefore this is a question of search and seizure only.

At the hearing of this motion, eight witnesses were examined and cross-examined, and both defendant and the government proffered exhibits which were received in evidence according to the procedure established by the aforesaid Rule 41(e), Federal Rules of Criminal Procedure. The following opinion rules on the grounds raised in the order of their presentation.

### I. Probable Cause for Issuance of the Search Warrant

The thrust of this objection is that the warrant was largely based upon hearsay. The circumstances are that on June 20, 1958, John J. Chiovero, Special Agent, Internal Revenue Service, appeared before United States Commissioner Henry P. Carr, in order to obtain search warrants. In fact, he secured two warrants —the second referring to premises located at 523 Minersville Street, Pottsville, Pennsylvania—whereas the warrant herein discussed referred to 209 Court Terrace in the same city. The second warrant was issued in substantially the same terms as the first, upon the same affidavit, and the rulings as to the first warrant will control the second. Discussion will be limited to the first, that is, the "209 Court Terrace" warrant.

Before the Commissioner, the Special Agent, John J. Chiovero signed an affidavit as follows:

"The undersigned, being duly sworn, deposes and says: That he has reason to believe that on the premises known as 209 Court Terrace, Pottsville, Schuylkill County, Pennsylvania, in the Eastern District of Pennsylvania, there is now being concealed certain property, namely, betting slips, run down sheets, records and other paraphernalia and equipment which are being used or intended for use in violation of Section 4411, 4412, 4901, 7203, 7262, 7272 and 7302 of the Internal Revenue Code of 1954 (Title 26 U.S.Code).

"And the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

"On June 19, 1958, a confidential informant, whom I believe to be reliable, appeared before me and made a statement, under oath, that Pete Joseph of Pottsville, Schuylkill County, Pennsylvania, has been engaged in the business of accepting wagers (numbers lottery) during the years 1956, 1957 and 1958 on the premises known as 209 Court Terrace and on the premises known as 523 Minersville Street, both located in Pottsville, Schuylkill County, Pennsylvania; that he has personally observed said Pete Joseph accept numbers bets from many persons during the years 1956, 1957 and 1958; and that he has personally ob-

served said Pete Joseph make records of numbers bets during the years 1956, 1957 and 1958.

"I have personally examined and have in my possession a day book record reflecting daily receipts and payments on wagers for the period from January 1956 through April 1958 and approximately 1431 betting slips covering numerous wagers (numbers lottery) during the months of April and June 1958. This day book and these betting slips have been identified to me by a reliable informant as being property of Pete Joseph and as being records of numbers lottery bets accepted by the said Pete Joseph and his employees.

"On June 19, 1958, I personally examined the records of the Collection Division, Office of the District Director of Internal Revenue, Philadelphia, Pennsylvania, relating to the registration, filing of returns and payment of the occupational tax imposed on persons engaged in the business of accepting wagers and found no record in the name of Pete Joseph or Peter Joseph or any person whose address was given as 523 Minersville Street, Pottsville, Pennsylvania or 209 Court Terrace, Pottsville, Pennsylvania."

Based on this affidavit, Commissioner Carr issued a search warrant directed to Special Agents John J. Chiovero, Edward F. Quarry and Thomas J. Ryan, Jr. The search warrant recited that the Commissioner is satisfied that there is probable cause to believe that the property so described is being concealed on the premises above described and that the foregoing grounds for application for issuance of a search warrant exist. The officers were directed to search the place named for the property specified—serving the warrant and starting the search in the day time.

Pursuant to this warrant, on June 21, 1959, the three agents directed to do so by the search warrant, in company with six others, searched the premises at 209 Court Terrace. The search began at 4:00 P.M. and ended at approximately 10:30 P.M.

As stated, defendant's first objection is on the score of hearsay. His position is that the Commissioner relied on the hearsay of the Special Agent, and that the Special Agent in turn relied on hearsay, and there was no showing of probable cause supporting the warrant.

The authorities in this field of searches and seizures are plentiful, but for the most part involve searches without search warrant. They are usually cases in which the search is incident to an arrest. The very point which the defendant makes is that most of the authorities which the government cites are of such nature. He says:

"The government then cites other cases that are supposed to hold that hearsay coupled with other information will support issuance of a search warrant * * * What the government fails to realize is that the requirement that no search warrant shall issue but on probable cause, supported by oath or affirmation, does not apply to an ordinary arrest without a warrant. For the latter, only probable cause need exist. Mueller v. Powell, (8 Cir., 1953), 203 F.2d 797, 803."

The distinction between probable cause, and probable cause supported by oath or affirmation suggested by defendant is one which this Court declines to make. Defendant's cited authority by no means decides that point. Mueller v. Powell, that is, mentioned the question, but not in any connection necessary to its resolution. 8 Cir., 1953, 203 F.2d 797, 803. That case was a civil action against state officers for deprivation of civil rights on grounds *inter alia* that the officers had unlawfully arrested the complainant. Mueller sued the sheriff of Boone County, Missouri and two of his deputies. Under the Civil Rights Act (42 U.S.C.A. §§ 1983, 1985) the action was brought in the United States District Court and tried by the court sitting as a jury. Judgment for the defendants

was affirmed—the effect being to hold that the state officers' arrest, without warrant, was not illegal since based on probable cause.

The distinction to which defendant refers is mentioned by the court in the course of a discussion of Missouri cases, and seems *obiter* in view of the court's observation which follows the references:

"* * * Clearly, it has long been the law in Missouri that facts and circumstances learned by an officer in the course of his official investigation of a criminal offense may constitute the basis for the necessary probable cause which will justify an arrest without a warrant. * * *"

General statements to the effect that hearsay, coupled with other facts and circumstances, can supply the necessary showing of probable cause are not far to seek. United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650; Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; Giacona v. United States, 5 Cir., 1958, 257 F.2d 450, 457; United States v. Bianco, 3 Cir., 1951, 189 F.2d 716.

It is entirely true, and perfectly understandable, that those cases involved factual situations and circumstances which differ from those at hand. Such differences are contemplated by the law. Brinegar v. United States, 1948, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879.

The statement that "A search warrant may issue only upon evidence which would be competent in the trial of an offense before a jury," Grau v. United States, 1932, 287 U.S. 124, 128, 53 S.Ct. 38, 40, 77 L.Ed. 212, was expressly disapproved in Brinegar v. United States, 1948, 338 U.S. 160, 174, 69 S.Ct. 1302. The latter case, 338 U.S. at page 175, 69 S.Ct. at page 1310 added that:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

At the other end of the spectrum is an interesting concept that in tariff cases, and by analogy revenue cases (of which the present is one), the standard or showing of probable cause requisite to the issuance of a search warrant is historically lower, requiring a lesser showing of probable cause, than in general. See Note: "The 'Probable Cause' Requirement for Search Warrants," 46 Harv.L.Rev. 1307 (1933).

Turning from such general considerations to the present motion, one starts with certain basic circumstances and principles. There was a warrant issued by the United States Commissioner, reciting his determination that probable cause existed. His judgment is conclusive unless it is arbitrarily exercised. Merritt v. United States, 6 Cir., 1957, 249 F.2d 19, and cases cited at page 20.

There is no denying that hearsay was largely involved in the probable cause showing made before the Commissioner, but the weight to be given that hearsay is deemed a matter for the discretion of this Court. United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650, 652, Augustus Hand, J.

On that basis, the motion to suppress for lack of probable cause is deemed without merit. At the very least, there was sufficient showing before the Commissioner to demonstrate that his issuance of the warrant was not arbitrary.

Comparable cases in which warrants have been upheld include United States v. Tolomeo, D.C.W.D.Pa.1943, 52 F.Supp. 737; Giacona v. United States, 5 Cir., 1958, 257 F.2d 450, 457; Merritt v. United States, 6 Cir., 1958, 249 F.2d 19.

By contrast, see United States v. Office No. 508 Ricou-Brewster Bldg., D.C.W.D. La.1954, 119 F.Supp. 24, where a search warrant was quashed since there was no showing, for instance, that any effort had

been made to determine whether the person or persons operating an alleged gambling business had registered or paid the tax required by federal law. See also United States v. Pollack, D.C.N.J.1946, 64 F.Supp. 554.

II. Objection that the Warrant is Invalid because the Premises to be Searched were not Adequately Described

The search warrant discussed herein referred to the premises as *No. 209 Court Terrace*. The companion warrant identified premises located at *523 Minersville Street*. Defendant says that the address at which the agents appeared on June 21, 1958, and through which ingress to the defendant's dwelling was secured, was in fact *209 Minersville Street*.

■ There was testimony that *Court Terrace*, as a matter of fact, is a continuation of *Minersville Street* (N.T. p. 57). In any case, if defendant is seriously taking the position that the address is or was insufficient, his argument is doomed to failure by the settled rule that all that is required is that the description suffice to enable the officers to ascertain and identify the place intended by reasonable effort. Steele v. United States, 1925, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757; United States v. Klaia, 2 Cir., 1942, 127 F.2d 529.

■ No showing was made that there was any adjoining building likely to be confused with the Joseph premises, regardless of which address or which entrance was specified.

III. Objection that the Warrant did not Adequately Describe the Personal Property Seized

■■ It is not denied by the government that general exploratory searches are forbidden. Go-Bart Importing Co. v. United States, 1931, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; Marron v. United States, 1927, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. Further, items of mere and sole evidentiary value are not subject to seizure. United States v. Lefkowitz, 1932, 285 U.S. 452, 52 S.Ct. 420,

76 L.Ed. 877; Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. The rule as to what material may be seized was stated by the Supreme Court in Harris v. United States, 1947, 331 U.S. 145, 154, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399, as follows:

"This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime."

■ The search warrant described the property to be seized as "betting slips, rundown sheets, records and other paraphernalia and equipment which are being used or intended for use" in violation of specified sections of the Internal Revenue Code of 1954. Petitioner argues that this description is "general, non-descriptive and inadequate to include all of the items of property actually taken."

■ First, it must be remembered that in a search of a gambling establishment, the same descriptive particularity is not necessary as in the case, for instance, of stolen goods. Nuckols v. United States, 1938, 69 App.D.C. 120, 99 F. 2d 353, 355. Second, and with the possible exception of the money, all of the property seized was clearly within the description contained in the search warrant and all of it was property used or intended for use as the means of committing a criminal offense. Merritt v. United States, 6 Cir., 1957, 249 F.2d 19, 21.

■ The money seized was also paraphernalia and equipment used and intended for use in violation of law. As was said in another case: "A sufficient amount of cash to meet the demands of

the trade appears to have been a necessary and closely related implement or facility of the wagering business transacted here." United States v. Currency in Total Amount of $2,223.40, D.C.N.D. N.Y.1957, 157 F.Supp. 300, 304; see also United States v. $1,508.40, D.C.S.D.Ill. 1958, 158 F.Supp. 916. It may be added that even were the money not within the description on the search warrant of the things to be seized, its seizure in these circumstances was still clearly proper. It is permissible to seize things other than those described in the search warrant if they have a reasonable relation to the purpose of the search. Bryant v. United States, 5 Cir., 1958, 252 F.2d 746, 749; Sanders v. United States, 10 Cir., 1956, 238 F.2d 145, 147; Palmer v. United States, 1953, 92 U.S.App.D.C. 103, 203 F.2d 66.

### IV. Objection that the Search Warrant was not Properly Served

There are three parts to this objection, each of which will be discussed separately.

*A. That Intelligence Agents of the Internal Revenue Service are not Empowered to Execute Search Warrants*

██ This argument cannot be upheld. Defendant submits no case authority, but rests his argument on an implied repeal theory. Section 3602 of the Internal Revenue Code of 1939, which specifically gave the United States District Courts and commissioners authority to issue search warrants authorizing any Internal Revenue officer to search any premises was omitted from the Internal Revenue Code of 1954. In this connection defendant cites Title 26 U.S.C. §§ 7607 and 7608.

This court is not persuaded that there was any repeal by implication. Legislative history of 26 U.S.C. § 7608 may be seen in 1958 U.S.Code Cong. and Adm. News, pp. 4604–4605. Similar contentions have been rejected in Dumbra v. United States, 1925, 268 U.S. 435, 45

S.Ct. 546, 69 L.Ed. 1032; Brown v. Zerbst, 5 Cir., 1938, 99 F.2d 745; and Leonard v. United States, 1 Cir., 1925, 6 F.2d 353.

*B. Objection that the Daytime Warrant did not Authorize Search which Continued into the Evening*

The evidence at the hearing was uncontradicted that the search began at 4:00 P.M. and ended at approximately 10:30 P.M. Under Federal Rules of Criminal Procedure 41(c) the warrant could only be served in the daytime, since affiant was not positive that the property was on the premises to be searched.

██ It is clear that only one search was involved. The point has been considered in a number of cases, and the rule seems clear that it is sufficient if the search begins in the daytime, although it continues after dark. United States v. Bell, D.C.1955, 126 F.Supp. 612, 617; Woods v. United States, 1956, 99 U.S.App.D.C. 351, 240 F.2d 37. See also Distefano v. United States, 5 Cir., 1932, 58 F.2d 963 and United States v. Liebrich, D.C.M.D.Pa.1932, 55 F.2d 341.

*C. Objections as to Personnel Accompanying the Authorized Officers, and the Manner of Conduct of the Search*

██ The three officers named in the warrant were all present at the search and active in its conduct. The fact that they were assisted by other special agents does not invalidate the search as contended by petitioner. Palmer v. United States, 1953, 92 U.S.App.D.C. 103, 203 F.2d 66; Nuckols v. United States, 69 App.D.C. 120, 99 F.2d 353.

Without citing cases directly in point, petitioner also argues that the conduct of the officers during the search was so unreasonable as to invalidate the search. It is true that a number of the officers and agents were armed, but there was no indication that firearms were drawn or exhibited. In fact, the entire proceeding—as revealed in the testimony at the hearing—was conducted without violence or force. It seems clear that the search-

ers merely took the usual and necessary precautions so that their search would not be interfered with and so that property would not be removed from the house during the course of the search. Searches infinitely more aggressive than the present one have been upheld by the federal courts. Costner v. United States, 6 Cir., 1958, 252 F.2d 496, 498; Barrientes v. United States, 5 Cir., 1956, 235 F.2d 116.

### Order

Since the contentions of the defendant petitioner, Peter Joseph, fail on all grounds, it is therefore the Order of this Court that the motion of defendant Peter Joseph for suppression of evidence and return of seized property be and the same is hereby denied.