UNITED STATES of America

v.

George ARNAL.

Crim. No. 62-342.

United States District Court
W. D. Pennsylvania.
May 28, 1963.

Samuel J. Reich, Asst. U. S. Atty., Pittsburgh, Pa., for United States.

Hubert I. Teitelbaum, of Morris, Safier & Teitelbaum, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

The defendant, George Arnal, moved to suppress evidence seized at his home at 118 Hamilton Avenue, Vandergrift, Pennsylvania, and for the return of same. He alleged that "the affidavit upon which the search warrant was based was insufficient in law to establish probable cause for the issuance of a search warrant" in violation of the Fourth and Fifth Amendments to the Constitution. A hearing was fixed and testimony was taken; however, no evidence was submitted to sustain the factual averments in the motion. Only the search warrant, the attached affidavit, the complaint and the arrest warrant were offered in evidence by the defendant (Exs. A, A-1, B, and C). No arrest was made on the date of the search. The issue then is whether the Commissioner was justified in issuing the search warrant. In our opinion he was.

The affidavit (Ex. A-1) was executed by a special agent of the Internal Revenue Service on September 22, 1962. He swore that he had reason to believe that certain specified wagering paraphernalia were concealed at 118 Hamilton Avenue, Vandergrift, Pennsylvania, in violation of §§ 7203, 4411, and 4412 of the Internal Revenue Code of 1954; that he had personally searched the records of the District Director in Pittsburgh for all wagering tax stamps issued in the Pittsburgh District for the period from July 1, 1962 to September 22, 1962, and found no record of the registration or issuance of a wagering occupational tax stamp to any person whose residence or business address was 118 Hamilton Avenue, Vandergrift, Pennsylvania.

On the same day he executed a second affidavit (see Appendix) which was stapled to the first affidavit. In it the agent alleged that for the past several months he was assigned to investigate wagering violations in the Vandergrift area. He swore that in connection with that investigation he had been told by informants, whose information had been reliable in the past, that George "Brown-

ie" Arnal was the "principal booker" of various types of wagers and that his operation was conducted mainly at his residence; that he had been seen accepting bets at various specified business places and with several businessmen in the Vandergrift area. The agent alleged that he induced one of these businessmen, McKee, to place two bets with Arnal by telephone—the first on August 29th, which the agent overheard, the second on September 13th—and was told by McKee that he had called Arnal at his home to place the last bet, and that he usually called him at home for bets by telephone.

In our opinion the Commissioner had substantial basis for crediting the hearsay statements contained in the agent's affidavit. Cf. Jones v. United States, 362 U.S. 257, 267–272, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960); United States v. Joseph, 174 F.Supp. 539 (E.D.Pa.1959), aff'd 278 F.2d 504 (3d Cir. 1960). Coupled with the hearsay was the corroborating fact that the agent himself heard McKee telephone Arnal and place a bet with him. As stated by Judge Lord in United States v. Joseph, supra, 174 F.Supp. at p. 543, "[a]t the very least, there was sufficient showing before the Commissioner to demonstrate that his issuance of the warrant was not arbitrary."

An appropriate order will be entered.

## APPENDIX

## AFFIDAVIT

United States of America ⎱
Western, District of Penna. ⎰ ss

I, John Charles Schwartz, Special Agent, Intelligence Division, state that:

I reside at 512 Wimer Circle, Pittsburgh 37, Pennsylvania.

I have been a Special Agent in the Intelligence Division of the Internal Revenue Service for 17 years. For the past several months I have been assigned to investigate wagering violations in the Vandergrift area; and in connection therewith, information that has been considered reliable in the past was given to me to the effect that George "Brownie" Arnal of 118 Hamilton Avenue, Vandergrift, is the principal booker of horse race bets, sports bets of all kinds and allegedly numbers bets with his operations mainly at his residence. He has been observed by reliable informants in the act of accepting horse and sport bets in several business locations in Vandergrift, Pennsylvania, at specified times. These places are the Sweetlane Chocolate Shop and the Brideson and Lace Hotel both located on Grant Avenue in downtown Vandergrift, Pennsylvania.

A reliable informant, whose information has been considered trustworthy in the past, informed me that Mr. Arnal never takes bets from strangers; but that he has observed several businessmen in the Vandergrift area make bets on numerous occasions in the past several months, and also prior thereto, with Mr. Arnal. One of these businessmen is Charles "Ching" McKee who normally works at the United Engineering Foundry in Vandergrift, and who also has a store at 115 McKinley Avenue, Vandergrift, Pennsylvania, known as McKee's Natural Food Center.

On August 29, 1962, at approximately 2:30 p. m. I went to the business location run by Charles McKee and talked about the futility of making horse bets when one was a stranger in town. He agreed that such was the case and said there were only a couple persons around town who took horse bets, and we agreed to play a horse together; namely, Kitty Moon, in the fourth at Waterford. McKee called one place and asked if Brownie Arnal was present and was told no. He then called another place and asked for Brownie Arnal. Brownie came to the phone and McKee informed him that it was Ching McKee calling. I could hear Brownie's reply, heavy and deep set, stating that this was Brownie on the other end of the phone. Ching stated that he wanted $5 and $5 (win and place) on Kitty Moon in the fourth at Waterford; and Brownie said, "O. K." Ching told me that I should see him tomorrow at the same time if we hit.

On September 13, 1962, I again saw Ching McKee at his place of business and talked about our losing horse bet. During the conversation he stated that he always played with Brownie Arnal, the man he called for our last previous bet. We agreed that we would split today's play of $2 across the board ($6 total) on Gray Topper in the sixth at Wheeling. McKee called a five digit number to place the bet with Arnal but couldn't get any answer, following which he said that Brownie would not be in until 5:00 p. m. at which time he would call the bet in again in as much as the race started at 8:15 p. m.

On Monday, September 17, 1962, I stopped in McKee's Natural Food Center at approximately 2:30 to 3:00 p. m. and McKee had my share of the winnings from the horse bet made previously with Arnal on September 13. The amount he paid was my half or $7.30. There being no race at Wheeling that day, it was decided I would see him the next day to discuss a further bet on the horses with Mr. Arnal.

I asked Mr. McKee at the instance when he made the last horse bet, namely, on September 13, through him to Brownie Arnal if he called Brownie at his home and McKee said, "Yes." He said he usually called him at home for bets by telephone.

The description of George "Brownie" Arnal is as follows:

Approximately 5'5" to 5'6" tall, weight about 140 pounds, wears dark shell-rimmed glasses, straight black hair, gray on sides, receding on top, and about 52 years of age.

Other:

Mr. Arnal is a very dapper dresser and usually wears a tie and sports slacks and sports shoes.

Attached hereto is a photostat of a photograph of Brownie Arnal (and George Kakias) taken by the Valley Daily News, Tarentum, Pennsylvania, on the instance of their appearance before a Federal Grand Jury on or about May, 1959.

I have read the foregoing statement consisting of 2 pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each.

I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

                                        (s) John C. Schwartz
                                        _____
                                        *(Signature of affiant)*

Subscribed and sworn to before me this 22nd day of September, 1962, at Pittsburgh, Pa.

_____
*(Signature)*

_____                (s) Donnell D. Reed
*(Title)*                               _____
                                        *(Signature of witness, if any)*

Internal Revenue Service