George C. **DER GARABEDIAN,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 22667.

United States Court of Appeals
Fifth Circuit.

Dec. 13, 1966.

Rehearing Feb. 3, 1967.

---

James S. McGrath, Walter M. Sekaly, Beaumont, Tex., for appellant.

H. S. Nicholson, Asst. U. S. Atty., Tyler, Tex., Jack M. McAdams, Asst. U. S. Atty., Beaumont, Tex., Fred M. Vinson, Jr., Asst. Atty. Gen., Crim. Div. Dept. of Justice, Washington, D. C., William Wayne Justice, U. S. Atty. Eastern Dist. of Texas, Tyler, Tex., for appellee.

Before JONES and DYER, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge.

Appellant was found guilty by a jury on Count Two of a four count information charging him with accepting and receiving wagers during the fiscal year ending June 30, 1963, without having paid the special occupational tax imposed by 26 U.S.C., Section 4411, in violation of 26 U.S.C., Section 7262. He was acquitted on Count One charging the same offense during the fiscal year ending June 30, 1962. Counts Three and Four were dismissed.

It is alleged that the trial court erred (1) in denying the motion to suppress urged both before and during trial, and (2) in refusing to grant a motion for judgment of acquittal filed at the conclusion of the evidence and after the jury verdict had been received. We hold that no error was committed and affirm.

### The Motion to Suppress

Appellant challenges the execution of a search warrant secured by Internal Revenue Special Agent Sawyer from the United States Commissioner, authorizing any IRS agent to search the premises involved, and to seize various wagering paraphernalia. It was not until the appellant himself took the stand as the last witness in the case, however, that he presented any evidence concerning this matter at all. None had been offered by him either at the pre-trial hearing on the motion to suppress, or at the time the motion was reurged during the direct examination of Agent Sawyer, even though the burden of persuasion and proof was upon him as the moving party. Rogers v. United States, (5 Cir. 1964)

330 F.2d 535, 542.[1]  Agent Sawyer was not cross-examined about the execution of the warrant, and the motion was not renewed after appellant testified.  Under the circumstances, the government did not offer any evidence contradicting appellant's version of the manner in which the warrant was executed, and did not further explore the facts and circumstances relative to the incident, either on direct examination of Agent Sawyer or the cross-examination of appellant.  As a consequence, there is very little evidence in the record with respect to this.

According to appellant, he arrived at the premises around 2:00 P.M. on March 7, 1963, and entered the dining room of the residence owned by his godmother.  After greeting her, he turned around and saw Agent Sawyer about three or four feet away open the unlocked screen door leading into the dining room and walk in with four or five other agents.  Once inside, Agent Sawyer said, "George, we have a search warrant for your house".  The warrant was then shown to appellant and he was permitted to read it, after which he was asked what part of the house he used.  He showed the officers his bedroom, which was searched and the evidence in controversy was found and seized.

■  Appellant contends that when the officers, having a valid search warrant, opened the unlocked screen door and walked into the dining room without first making an attempt to secure permission, this constituted a "breaking" in violation of 18 U.S.C., Section 3109,[2] thus making the evidence seized inadmissible.  However, as we view this case, it is not necessary to decide whether or not a breaking actually occurred, because, even if it did, the facts surrounding the entry bring it within an exception recognized in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

In *Miller* the officers had neither an arrest nor a search warrant, and physically broke open a chained door.  Although the Court said that the rule "seems to require notice in the form of an express announcement by the officers of their purpose for demanding admission", it noted that such an announcement would be a "useless gesture" if "the facts known to officers would justify them in being virtually certain that the defendant already knows their purpose".  Here the entry was peaceable and took

---

1.  This case also holds that the government is entitled to the benefit of a presumption of proper police conduct.  330 F.2d 535, 542.

2.  This section provides as follows:  "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant".
In support of his position, appellant cites Keiningham v. United States (1960), 109 U.S.App.D.C. 272, 287 F.2d 126, which held that an entry without permission constituted a "breaking".  The facts included a warrant issued for a house other than that searched, a breaking down of a door, and catching the defendants in the act of a numbers operation on the premises adjoining the premises for which the warrant was issued.  Compare that case however, with Barrientes v. United States (5 Cir. 1956) 235 F.2d 116, cert. den., 352 U.S. 879, 77 S.Ct. 102, 1 L.Ed. 2d 80 (1956), decided a year prior to Miller, wherein this Court was of the opinion that the facts did not indicate the use of excessive force.  There, federal agents and city policemen executed a search warrant at 2:15 P.M.  Without any warning, the policemen knocked on the rear door of the house.  The door swung open, fell off its hinges, and exposed the defendant, who was sitting at the kitchen table.  An agent, with the warrant still in his pocket, followed the policemen into the kitchen and then advised the defendant he was a narcotics agent serving a warrant.
Recently, the Sixth Circuit in refusing to follow Keiningham stated that it "stands as an isolated example of its conclusion".  United States v. Williams (6 Cir. 1965) 351 F.2d 475.
See also Leahy v. United States (9 Cir. 1959) 272 F.2d 487, and Dickey v. United State (9 Cir. 1964) 332 F.2d 773.

place at a reasonable hour. Appellant was fully warned as to his rights prior to being placed under arrest, and he was permitted to read the warrant before his bedroom was searched. He admits that he knew Agent Sawyer and recognized him as he opened the screen door. It is obvious that he was known on a first-name basis to Agent Sawyer, who had previously taken some statements from him during the gambling investigation which resulted in his arrest. The trial court properly denied the motion to suppress each time it was submitted to him for a ruling, and the completed record supports our conclusion that Agent Sawyer was justified in being "virtually certain" that appellant knew his identity and his authority, as well as his purpose, and that it would be a "useless gesture" to make an announcement to that effect.

### The Sufficiency of the Evidence

■ The government's case was based on the testimony of Agent Sawyer, the wagering paraphernalia seized at the premises, and direct testimony of three witnesses who said they had placed bets with appellant. The evidence is mainly circumstantial, but it should be noted that the events occurring before the fiscal year ending June 30, 1963, could be considered by the jury in determining whether a crime was committed in that fiscal year. United States v. Dennis (2 Cir. 1950) 183 F.2d 201, aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1950).

Carl Pavia, a witness for the government, testified that he placed bets with appellant in the 1962 baseball season over the telephone which had been installed in 1960 and was still working. The extension telephone in appellant's bedroom rang five or six times while the agents were there. They picked it up and each time, according to them, the caller hung up. The long distance toll records for

that telephone number reflected calls to University Field Houses, known bookmakers, news media, and sports departments from January, 1961 to January, 1963.

One other witness testified that he placed bets with appellant in 1961. The third witness stated that he had placed bets with appellant, but did not recall whether it was in 1960 or 1961.

■ After a full review of the evidence we hold that the circumstances implicating the appellant as a bookmaker during the fiscal year ending June 30, 1963 were sufficient to allow the issue to go to the jury.

The judgment is

Affirmed.

## ON PETITION FOR REHEARING

PER CURIAM.

In his petition for rehearing appellant argues that if the officer was justified in being "virtually certain" that appellant knew his purpose, he would not have informed appellant upon entering the dining room that he had a search warrant for the house. However, we see no inconsistency in this. As already indicated, Agent Sawyer and appellant were on a first-name basis. The officer was required by Rule 41(d), F.R.Cr.P. to, among other things, make an inventory of property taken in appellant's presence and give him a copy of the warrant. It was only natural for the officer, upon personal confrontation with appellant, to say that he had the warrant, even though he was justified in being "virtually certain" that this too was a "useless gesture".

Finding no merit in appellant's contentions with respect to the motion to suppress or the sufficiency of the evidence, the petition for rehearing is hereby denied.