**UNITED STATES of America**
v.
**Steve KARATHANOS and John Karathanos, Defendants.**
**No. 75 CR 456.**

United States District Court, E. D. New York.

Aug. 1, 1975.

David G. Trager, U. S. Atty., E.D. N.Y., by Paul F. Corcoran, Asst. U. S. Atty., for the United States.

John Leone, Brooklyn, N. Y., Schiano & Wallenstein, New York City, by Stanley H. Wallenstein, New York City, for defendant John Karathanos.

## MEMORANDUM AND ORDER

WATSON, District Judge.

Defendants are charged with concealing, harboring or shielding from detection aliens not lawfully entitled to enter or reside within the United States in violation of 8 U.S.C. § 1324.

Pursuant to Rule 41(f) of the Federal Rules of Criminal Procedure they move to suppress the evidence obtained as a result of a search of the premises of Steve's Pier I Restaurant (hereafter referred to as the premises), a search conducted by agents of the Immigration and Naturalization Service pursuant to a warrant issued by the federal magistrate on May 16, 1975. The search resulted in the arrest of seven individuals found on the premises. It is the suppression of evidence of their presence in the restaurant and any testimony which they might give as a result of their arrest which is the object of defendants' motion.

Defendants argue that the issuance of the search warrant was not supported by probable cause that a federal crime had been or was being committed. Specifically, they contend the affidavit of an investigator of the Immigration and Naturalization Service (The Jacobs Affidavit), did not provide the magistrate with sufficient basis to believe that a crime had probably been committed.

The text of the Jacobs affidavit reads as follows:

NEIL JACOBS, being duly sworn, deposes and says that he is a criminal investigator, employed by the Immigration and Naturalization Service of the Department of Justice, duly appointed according to law and acting as such.

Upon information and belief, there are a number of aliens who are not lawfully entitled to enter or reside within the United States, employed at and present within the premises known and operated as STEVE'S PIER I RESTAURANT, 33 BAYVILLE AVENUE, BAYVILLE, NEW YORK, within the Eastern District of New York. The presence of said aliens is a violation of Title 8, United States Code, Section 1325. Moreover, such aliens are subject to arrest pursuant to Title 8, United States Code, Section 1325, for having unlawfully entered the United States.

The source of your deponent's information and the grounds for his belief are:

1. During the past five years at least eleven illegal aliens have been apprehended on the premises known as STEVE'S PIER I RESTAURANT, 33 BAYVILLE AVENUE, BAYVILLE, NEW YORK, including but not limited to the following individuals: MICHAEL KATSIGIORGIS, DIMITRIOUS STROUPAS, EMANUEL ARETINES, VELIRIS KOSTAS, VICTOR LLANOS, KOASTANTINOS VOULGARIDIS, ROBERTO BARRENCHEA-CAMACHO, VICTOR ALEXANDRO LLANOS–ATUNEA, LADIGLAO VE-NEGAS–FLORES, HUGO LAGOS, and NIKOLOS TISSANOS.

2. On May 15, 1975, one ANTHANASIOS ATHANASIOU an admitted illegal alien, holding Greek citizenship, surrendered himself to agents of the Immigration and Naturalization Service at 20 West Broadway, New York, New York. After being advised of his rights, Mr. Athanasiou advised that he had been employed at STEVE'S PIER I RESTAURANT, 33 BAYVILLE AVENUE, BAYVILLE, NEW YORK, from October of 1973 till Sunday, May 11, 1975; that as of May 11, 1975 at least eight other persons known to him to be illegal aliens were employed at STEVE'S PIER I RESTAURANT, 33 BAYVILLE AVENUE, BAYVILLE, NEW YORK. That during the last year and a half he has resided in the basement of said restaurant with eleven other individuals in six (6) foot by six (6) foot cubicles. That at least six of the eleven individuals residing in the basement at 33 Bayville Avenue, Bayville, New York are known to him to be illegal aliens.

WHEREFORE, your deponent respectfully requests that a warrant issue to your deponent or any other criminal investigator employed by the Immigration and Naturalization Service of the Department of Justice, authorizing him or them to enter with proper assistance the premises known as STEVE'S PIER I RESTAURANT, 33 BAYVILLE AVENUE, BAYVILLE, NEW YORK and there to search for the above described aliens.

 It is my opinion the information supplied in this affidavit is less than that which could provide a substantial basis to believe that "illegal" aliens were probably to be found on the premises proposed to be searched. Without a substantial basis to believe the object of the search will probably be found on the premises proposed to be searched, the search warrant should not issue.

*Jones v. U. S.*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

There has been an initial dispute as to precisely what crime or "illegality" the Jacobs affidavit had to indicate. Defendants have argued that probable cause had to exist to believe a violation of 8 U.S.C. § 1325 had occurred. Such a violation would be limited to entering the United States at a place other than a designated entry point or by eluding immigration inspection or by obtaining entry by making false representation. The government argues that probable cause to believe that *any* "illegality" existed in an alien's status would justify the issuance of a search warrant. Such an "illegality" might arise from staying on beyond the term of a legal visa such as would be held by a tourist or student. The government bases its position either on the tenuous theory that any "illegality" in an alien's status gives reason to believe a violation of 8 U.S.C. § 1325 has occurred or on the powers given to agents of the Immigration and Naturalization Service in 8 U.S.C. §§ 1357(a)(1) and 1357(a)(2) to interrogate or arrest aliens without a warrant.

Theoretically, probable cause to believe in the "illegal" status of aliens might be easier to develop than probable cause to believe in a violation of 8 U.S.C. § 1325 for the simple reason that § 1325 covers fewer fact situations, all related to the manner of entry. See, *United States v. Oscar*, 496 F.2d 492 (9th Cir. 1974). However the deficiencies of the Jacobs affidavit are such that it falls short of providing a substantial basis to believe that "illegal" aliens of *any kind* were on the premises let alone that they were violators of 8 U.S.C. § 1325. Consequently, I do not find it necessary to decide the serious question of whether anything other than the prospect of discovering violations of 8 U.S.C. § 1325 would justify the issuance of a search warrant.

■ I should note, however, that I reject any suggestion that the powers granted in 8 U.S.C. § 1357 in any way lessen the requirement that probable cause exist when a search warrant is sought in connection with a search for "illegal" aliens in the broader sense. I also reject any analogy between the situation herein and the type of administrative inspection searches which were found reasonable in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). See, *Almeida-Sanchez v. U. S.*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). See also, *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

Aside from the special circumstances existing at our borders with other countries and their functional equivalents, I find no support whatsoever for a standard of probable cause to search for "illegal" aliens less rigorous than that prevailing in searches relating to matters generally considered to be crimes. Accordingly, the Jacobs affidavit must be subjected to the same scrutiny it would undergo if it were to be submitted for the purpose of searching for evidence of crimes in such matters as narcotics, gambling, alcoholic beverages, firearms or stolen merchandise.

The Jacobs affidavit contains two rudimentary informative paragraphs; the first, a statement by the affiant that during the past five years at least eleven named "illegal" aliens were apprehended on the premises; the second, the hearsay information of a named admitted "illegal" alien, one Athanasiou, that he had worked and lived on the premises for a year and a half, that he knew eight fellow-employees to be illegal aliens and that he knew six of his eleven follow-residents to be "illegal" aliens.

The affidavit stands or falls on the hearsay information it contains. This information is the conclusory assertion of knowledge by Athanasiou, an "admitted illegal alien" that other persons employed and residing on the same premises as he, were "illegal aliens". This is not enough to provide a reasonable and prudent man with a substantial basis to

believe that aliens who had entered the United States in violation of 8 U.S.C. § 1325 were probably to be found on the premises, or for that matter, that "illegal" aliens of any kind were to be found there.

■ I am well aware that affidavits for search warrants should not be viewed in a grudging or negative manner nor should they be impeded by overtechnical requirements of elaborate specificity. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). However, where the hearsay information is of such fundamental importance, its impact is vitiated by its bare conclusory form, the absence of any indication as to how the informant came to his incriminating conclusion and the lack of a specially strong showing of credibility or reliability. The simple fact that Athanasiou worked and lived on the premises is not enough to provide a substantial basis to believe what he says about the criminal or "illegal" status of others on the premises. This is particularly so when, as here, there is no logical connection between presence on the premises and the witnessing of conduct revealing entry into the United States in a manner which violates 8 U.S.C. § 1325 or any other illegality in the status of others who may be on the premises.

The government has attempted to bolster the hearsay information by making comparisons to selected elements of prior cases. The conclusory assertion that Athanasiou knows others to be "illegal" aliens is compared to the conclusory assertion in *United States v. Draper,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) that the defendant would be carrying narcotics. The reported admission by Athanasiou that he was an illegal alien is said to resemble the admission of major elements of an offense relating to the sale, purchase, or possession of unstamped liquor which was analyzed in *Harris v. United States,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). The absence of material related to Athanasiou's credibility and reliability is likened to the absence of reliability recitations in witness-informant affidavits such as that involved in *United States v. Burke,* Slip Op. No. 888, decided June 25, 1975.

I do not accept either the accuracy of these comparisons or the underlying assumption that if the present hearsay information simply has some resemblance to "approved" elements of past affidavits, it must be sufficient to establish probable cause.

The conclusory assertion by the informant in *United States v. Draper, supra,* that the defendant would be carrying narcotics was a deficient aspect of the information. The deficiency was remedied by a strong indication of the informant's prior reliability and an unusual precision in the informant's description of the circumstances surrounding the predicted criminal act. Neither of these remedial factors are present here.

Similarly, in *Jones v. United States, supra,* additional factors such as previous reliability, corroboration by other sources of information and the fact that defendant was "known by the police to be a user of narcotics" overcame the weakness of the informant's statement that he had bought narcotics on the premises and his assertion that narcotics were secreted there. Taken together, these factors provided a substantial basis for the magistrate to conclude narcotics were probably on the premises. It is important to note the statement in Justice Frankfurter's opinion at page 271 of 362 U.S., at page 736 of 80 S.Ct. that "it might not have been enough" had the affiant simply been told by one who claimed to have bought narcotics there that defendant was selling narcotics in the apartment. I am even of the opinion the suggested deficient portion of the informant's statement in *Jones* was more incriminating and more creditable than what we have here.

In *United States v. Harris, supra,* the informant's statements against his own penal interest were closely related to the criminal activity on the premises which was the object of the search. Thus, the credibility which was generated was not simply a result of the informant having made *any* statement against penal interest but rather one which arose out of involvement in the sale and purchase of illicit liquor on the premises. The essence of the Chief Justice Burger's analysis was stated at page 584 of 403 U.S., at page 2082 of 91 S.Ct. as follows:

> Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. *But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search.* [emphasis supplied]

■ Here, whatever the nature of the admission against interest, it did not arise out of conduct which involved others on the premises or implicated the premises beyond his own presence there. Consequently, Athanasiou's admission that he was an "illegal" alien standing alone, adds little if anything to his credibility and does nothing to remedy the crucial failing of the affidavit which is the complete absence of any facts underlying his incriminating conclusion.

■ The absence of other material relating to the informant's credibility or the reliability of his information remains a defect in this affidavit since the circumstances here are not similar to those in which additional credibility and reliability factors were found to be dispensable. In general, where the informant is a witness to criminal activity and his information contains his observations underlying his conclusion, a deemphasis of material relating to general credibility or prior reliability is justifiable. Thus, in *United States v. Sultan,* 463 F.2d 1066 (2 Cir. 1972) probable cause to believe that assets of the bankrupt were being concealed on the premises proposed to be searched was supplied by the hearsay statement of the defendant's cousin who said that defendant told him the assets were being concealed on the premises. In *United States v. Burke,* 517 F.2d 377 (CA 2d, 1975) probable cause to believe an unregistered sawed-off shotgun was on the premises proposed to be searched was based on hearsay information that the informant had seen the shotgun in the bedroom of defendant's apartment and defendant had told him the shotgun was stolen in a burglary. See, *United States v. Viggiano,* 433 F.2d 716 (CA 2d, 1970) cert. denied 401 U.S. 938, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971); *United States v. Dziliak,* 441 F.2d 212 (CA 2d, 1971); *United States v. Bozza,* 365 F.2d 206 (CA 2d, 1966). See also, *United States v. Office No. 508 Ricow-Brewster Bldg.,* 119 F.Supp. 24 (W.D.La.1954).

It is probably true that the exact dual requirement announced in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (that the affidavit show the credibility of the informant and the reliability of his information as well as the circumstances underlying his incriminating conclusion) cannot be inflexibly applied to first time witness-informants. However, if there is to be flexibility in such cases, it surely cannot be displayed by allowing raw incriminating conclusions in circumstances where it is not clear how those conclusions were reached. After all, how can one explain a deficiency or complete absence of witnessed facts underlying an incriminating conclusion from someone whose sole claim to our attention and credibility derives from being a witness?

I am unwilling to perpetuate a standard for probable cause which combines the weakest aspects of prior affidavits; the absence of underlying facts in information supplied by reliable informants and the absence of credibility and reliability material in information supplied by witness-informants. Such a standard would justify the issuance of search

warrants on a basis which is closer to raw suspicion and arbitrariness than the reasonable probabilities and inferences our constitution and our consciences demand. See generally, *United States v. Draper*, 358 U.S. 314, 79 S.Ct. 329 (1958) (dissenting opinion of Justice Douglas).

Viewed in this light, the informant's statement and the Jacobs affidavit as a whole is not the substance of which probable cause is made. In my opinion it could not provide a prudent man with a substantial basis to believe "illegal" aliens were probably on the premises and the search warrant ought not to have been issued.

Based on the foregoing, it is

Ordered, that defendants' motion to suppress the evidence obtained as a result of the search and seizure conducted on the premises on May 18, 1975 be, and the same hereby is, granted.